**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CRIMINAL ACTION** |
| ) | |
| v. ) | No.  05-10121-11-MLB |
| ) | |
| ANGEL SOTO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's pretrial motions. (Docs. 133, 135, 136, 137, 138, 139, 140, 141 and 142).  Defendant is charged with conspiracy to distribute methamphetamine, possession with intent to distribute methamphetamine and use of a communication facility in facilitating the commission of distribution of methamphetamine.  The court held a hearing on May 4, 2006, and the parties submitted evidence on defendant's motions to suppress statements (Doc. 135) and wiretap evidence (Doc. 138).  The court also conducted a partial hearing pursuant to United States v. James, 590 F.2d 575, 582 (5th Cir.), cert. denied, 442 U.S. 917, 99 S. Ct. 2836, 61 L. Ed.2d 283 (1979).  (Doc. 139).

**I.   FACTS AND PROCEDURAL HISTORY**

During the summer of 2004, agents of the Drug Enforcement Agency began investigating Jorge Medina-Montes, a co-defendant in this case. In investigating whether a conspiracy to distribute methamphetamine existed, the agents utilized the following techniques: eight confidential sources; physical surveillance; search warrants; pen registers; a global positioning system; and garbage seizures.  In

order to attempt to identify more individuals involved in the alleged conspiracy, agents and the U.S. Attorney submitted applications for wiretaps on specific target numbers to this court. The court approved those requests and entered orders authorizing a wiretap on various numbers used by Medina-Montes and other individuals identified as part of the alleged conspiracy. At the time the initial order was entered, the agents had no knowledge of defendant's involvement with Medina-Montes.

On March 8, 2005, the court authorized a wiretap on target numbers (316) 761-6154 and (316) 390-1034. (Exh. 4). On March 17, 2005, the court authorized a wiretap on target number (316) 390-1614. (Exh. 5). On April 7 and May 6, 2005, the court authorized a continued wiretap on target number (316) 761-6154. (Exh. 4b, 4c). On April 8, the court authorized a wiretap on target number (316) 409-2081. (Exh. 6). On May 6, 2005, the court also authorized a wiretap on target number (316) 871-9911. (Exh. 4c). As a result of the wiretap evidence, the agents were able to identify defendant as an individual in communication with Medina-Montes.

On November 16, 2005, defendant was indicted and an arrest warrant issued. On November 29, defendant was arrested. Upon his arrest, defendant was transported to the National Guard Armory. Maria Anderson, an officer of the Wichita Police Department and a Spanish interpreter for the department, assisted DEA agent Tyler Graham. Anderson had a Miranda card written in English and translated that card to defendant in Spanish. Anderson had no reason to believe that defendant did not understand his rights. Anderson and Graham did not threaten defendant, nor did they make any promises and their weapons

were not displayed.  Defendant was sitting unrestrained at a table with Anderson and Graham.  Defendant waived his rights and agreed to speak with Anderson and Graham.  Defendant said he understood English but wanted Anderson present in the event that he might need additional clarification.

During the interview, defendant frequently responded to Graham's questions in English, but on occasion utilized Anderson.  Defendant did not state that he wanted to cease the questioning.  Defendant was not asked his nationality.  Defendant was not asked if he wanted his consular representative present.

After the interview, Benjamen Romero, a deputy from the Sedgwick County Sheriff's Office, transported defendant from the armory to the Sedgwick County Jail.  Upon arrival at the jail, Romero completed a standard booking form with defendant.  Romero, who speaks fluent Spanish, asked defendant the questions in Spanish.  Romero asked defendant where he was from and defendant replied that he was from Mexico.  Romero then asked defendant if he wanted to contact the consulate.  Defendant declined.

**II.   ANALYSIS**

    **A.   Motion in Limine (Doc. 133)**

Defendant has submitted a motion in limine which seeks to exclude certain evidence during trial.  For the most part, the government does not object to defendant's motion.  The court will briefly rule on the items which are still contested.

        1.   Facts not Part of the Record

The government may refer to facts not yet part of the record during opening.  The government agrees that it will not offer facts

which are not part of the record during closing argument.

      2.    Suggestion that Prosecution is Aware of Evidence Not Contained in the Record.

The government agrees that this would be improper during closing argument. During opening, however, the government is free to make its statement since the record has yet to be established.

      3.    Burden of Proof

The government agrees that it is improper to suggest that defendant bears the ultimate burden of proof.

      4.    Physical Evidence

Defense counsel may contact the government in order to examine any physical evidence pertaining to defendant. The court understands that defendant's counsel has inspected all physical evidence.

      5.    Expert Opinions and Defendant's Statement

The government may admit any expert opinion and/or statement by defendant that has been provided to defendant during discovery.

      6.    All other motions

The government has agreed that all other evidence defendant seeks to exclude will not be offered during trial.

**B.    Motion to Suppress Statement (Doc. 135)**

Defendant moves to suppress his statement made during the interview at the armory on the basis that he did not voluntarily waive his <u>Miranda</u> rights and was not informed of his rights under the Vienna Convention. The applicable legal standards governing defendant's <u>Miranda</u> rights are well established.

> In <u>Moran v. Burbine</u>, 475 U.S. 412, 421, 106 S. Ct. 1135, 1140-41, 89 L. Ed.2d 410 (1986), the Supreme Court, observing that the Miranda inquiry has two "dimensions,"

-4-

>     commented as follows: First, the relinquishment of the
>     right must have been voluntary in the sense that it was the
>     product of a free and deliberate choice rather than
>     intimidation, coercion, or deception. Second, the waiver
>     must have been made with a full awareness of both the
>     nature of the right being abandoned and the consequences of
>     the decision to abandon it. Only if the "totality of the
>     circumstances surrounding the interrogation" reveals both
>     an uncoerced choice and the requisite level of
>     comprehension may a court properly conclude that the
>     Miranda rights have been waived.

United States v. Soria-Garcia, 947 F.2d 900, 902 (10th Cir. 1991).

While defendant asserts in his motion that defendant never received the Miranda warning, the court finds the testimony of Anderson and Graham to be credible. Without belaboring the analysis, the court determines that defendant was adequately advised of his rights in Spanish, a language in which defendant is fluent, and that defendant voluntarily waived those rights.[1] Defendant's motion to suppress his statement on the basis that it was made in violation of his Miranda rights is denied.

Defendant next asserts that his statement should be suppressed since he was not advised of his rights under the Vienna Convention. The Tenth Circuit has not determined whether the Vienna Convention creates individual rights. United States v. Minjares-Alvarez, 264 F.3d 980, 986 (10th Cir. 2001). The Tenth Circuit has held that even if the Vienna Convention created individual rights, the remedy for that violation would not be suppression. Id. Accordingly, without making a determination that defendant has individual rights under the

---

[1] Defendant has also asserted that the interview violated his Sixth Amendment right to counsel. Although a right to counsel arises with the indictment, Graham and Anderson were free to question defendant once he voluntarily waived his right to counsel. See Patterson v. Illinois, 487 U.S. 285, 296, 108 S. Ct. 2389, 2397 (1988).

-5-

Vienna Convention, defendant's motion to suppress his statement is denied.

**C.   Motion for Disclosure of Criminal History, Plea Agreements, and Impeachment Materials (Doc. 136)**

1.   Defendant's and Co-conspirators' Criminal Records

The government has provided defendant with his criminal record. The government will provide defendant with all records of any testifying co-conspirator.

2.   Plea Agreements of Testifying Co-Conspirators

The government will provide defendant with the plea agreements once they become available.[2]

3.   Evidence of Prior Criminal Acts

Defendant seeks evidence of prior criminal acts of testifying prosecution witnesses whether or not those acts resulted in conviction. The government has responded that it will disclose its witnesses criminal record; however, it is not required to produce evidence of bad acts that did not result in a conviction. The court agrees with the government. Defendant's authority does not stand for the proposition that prior bad acts that did not result in a conviction must be produced by the government. Defendant's motion is denied.

4.   <u>Giglio</u> Material

The government has agreed to produce all <u>Giglio</u> material.

**D.   Motion to Exclude Evidence of Guilty Pleas by Non-Testifying Co-Defendants (Doc. 137)**

---

[2] Currently, the court's calendar shows that five co-conspirators will enter their pleas the day prior to trial.

-6-

The government has agreed that it will not introduce into evidence a guilty plea by a non-testifying co-defendant. The government may introduce evidence of a guilty plea of a testifying co-defendant. The court will properly instruct the jury on this issue.

**E.   Motion to Suppress Wiretap Evidence (Doc. 138)**

Defendant seeks to exclude the wiretap evidence from admission during trial on the basis that the wiretap orders violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, et seq. and the Fourth Amendment. Defendant asserts that the government did not follow procedures with the continued interception of number (316) 761-6154, failed to establish that necessity existed for the use of wiretaps in investigating the activities of Medina-Montes, did not intercept calls in conformity of the order and failed to minimize interception of non-pertinent telephone calls.

Defendant's first argument, that the government failed to request additional authorization to wiretap target number (316) 761-6154, can be easily disposed of. During the hearing, the government submitted the wiretap orders for that target number. The court authorized the wiretap on March 8, 2005, and subsequent extensions were ordered on April 7 and May 6, 2005. Accordingly, the government had received authorization to monitor calls on that target number during the time period in question (March 8 to May 23).

Defendant asserts that the wiretap was not necessary since the government had already identified many individuals and had evidence relative to the offenses charged in counts 1 through 17 before any wiretap applications were made. Defendant submits that traditional investigatory methods were sufficient in this case.

> A defendant bears the burden of proving that a wiretap is invalid once it has been authorized. United States v. Quintana, 70 F.3d 1167, 1169 (10th Cir. 1995). In order to prove that a wiretap is necessary, the government must show that traditional investigative techniques have been tried unsuccessfully, reasonably appear to be unsuccessful if tried, or are too dangerous to attempt. 18 U.S.C. §§ 2518(1)(c), 2518(3)(c). If any of these traditional investigative techniques has not been tried, the government must explain why with particularity. United States v. Mitchell, 274 F.3d 1307, 1310 (10th Cir. 2001). The government must also explain a failure to use other techniques such as pen registers or trap and trace devices. Castillo-Garcia, 117 F.3d at 1187-88. We consider "all the facts and circumstances in order to determine whether the government's showing of necessity is sufficient to justify a wiretap," id. at 1187 (internal quotation marks and citation omitted), and read the necessity requirement "in a common sense fashion," United States v. Nunez, 877 F.2d 1470, 1472 (10th Cir. 1989). A successful challenge to the necessity of a wiretap results in the suppression of evidence seized pursuant to that wiretap. United States v. Green, 175 F.3d 822, 828 (10th Cir. 1999).

United States v. Ramirez-Encarnacion, 291 F.3d 1219, 1222 (10th Cir. 2002).

Agent Graham testified that the wiretap was necessary in order to identify all the members of the conspiracy. The applications for the wiretap detail the methods used by the agents from summer of 2004 until the wiretap was authorized in March 2005. The government used eight confidential sources, physical surveillance, search warrants, pen registers, a global positioning system, and garbage seizures. The government, however, was still unable to identify many individuals involved. As a result of the wiretap evidence, the government identified ten additional individuals, defendant included, involved in the conspiracy.

Based on the information in the application for the wiretaps and the testimony of Agent Graham, the court finds that the government made an adequate showing of necessity.

-8-

Finally, defendant asserts that the government failed to minimize the number of monitored calls that were nonpertinent to the investigation. "The starting point for review of the adequacy of minimization efforts is an examination of the reasonableness of the agents' efforts to refrain from monitoring conversations deemed nonpertinent to the investigation. Reasonableness must be determined from the facts of each case." United States v. Willis, 890 F.2d 1099, 1101 (10th Cir. 1989)(internal citations omitted). The court must first examine the general minimization effort involved in the wiretaps and then examine the "particular efforts to minimize made specifically with regard to defendant." Id.

Agent Graham testified that after each application was signed, a minimization meeting occurred. Each agent was required to read the application, order, affidavit and minimization letter from the Assistant United States Attorney (AUSA). The minimization letter instructs that only the calls of certain individuals can be monitored, the calls may be monitored if the agents suspect that the call involves criminal activity, the calls may be "spot" monitored for under two minutes to determine whether the caller is discussing criminal activity and calls between individuals which may be privileged cannot be monitored. (Exh. 7a). The agent must then speak to the AUSA about minimization. Every person who will monitor the calls must complete this process. The calls were monitored by persons who were fluent in Spanish.

The court is persuaded that the government's methods to minimize nonpertinent calls were sufficient. Defendant has not put forth evidence that would challenge the government's general efforts.

-9-

Defendant does, however, assert that five calls intercepted in which defendant was involved should have been minimized. Defendant asserts that those calls involved his work, family and efforts in finding a new home. During the hearing, Agent Graham demonstrated the potential pertinence of each call. On March 17, a call was intercepted with a duration of one minute. That call discussed whether the mail had been delivered. On March 18, Medina-Montes made a twenty second call to tell defendant that he will be by. On March 23, a two minute call occurred in which Medina-Montes asked defendant if he is working and whether "they made him dizzy." On April 17, Medina-Montes asked defendant when he is moving and they talked about ordering hats. On April 8, a one and a half minute conversation is intercepted in which defendant is talking about getting new phones.

Agent Graham testified that most often calls under two minutes were intercepted because the agent was attempting to determine whether the call involved criminal activity. Interception of the first two to three minutes of calls does not violate the minimization requirement. Id. at 1102 (citing United States v. Losing, 560 F.2d 906, 909 n. 1 (8th Cir. 1977), cert. denied, 434 U.S. 969, 98 S. Ct. 516, 54 L. Ed.2d 457 (1978)). Agent Graham also explained that dealers almost exclusively use code words for drugs, such as the conversations which discussed the mail, work, and hats. Agent Graham also testified that the conversation regarding a new phone would be pertinent since the agents needed to know if the suspects would be changing phones.

The court finds that the government has established that it used reasonable minimization. Defendant has failed to show how the

government could have more effectively minimized calls.

Defendant's motion to suppress the wiretap evidence is accordingly denied.[3]

### F.  Motion for Pretrial James Hearing and Disclosure of Co-Conspirators' Statements (Doc. 139)

The government has asserted that it will introduce into evidence statements of co-conspirators that were recorded pursuant to the previously discussed wiretaps.[4] Defendant moved for the court to conduct a hearing pursuant to United States v. James, 590 F.2d 575, 582 (5th Cir.), cert. denied, 442 U.S. 917, 99 S. Ct. 2836, 61 L. Ed.2d 283 (1979). In order to determine whether the statements made by co-conspirators are admissible, the court should conduct a hearing to find whether the government has established the following elements by a preponderance of the evidence: "(1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy." United States v. Sinclair, 109 F.3d 1527, 1533 (10th Cir. 1997). The parties agreed that the hearing would be confined to determining whether the conspiracy existed and the identity of members of the conspiracy.

In order to establish that a conspiracy existed, Lance Oldridge, an agent with the Drug Enforcement Agency, testified as to the members

---

[3] Defendant had asserted that the government failed to seal the evidence in accordance with the statute. (Doc. 138 at 15-16). During the hearing, however, defendant stated that he was satisfied with the government's documentation that provided the evidence was sealed in accordance with the statute.

[4] The government does not intend on producing evidence of statements by co-conspirators that were not contained on the wiretaps.

-11-

of the conspiracy. Oldridge interviewed ten of the alleged co-conspirators and has reviewed the wiretap evidence. Oldridge interviewed defendant's brother, Martin Soto, and Jorge Medina-Montes, alleged organizer of the conspiracy. Based on the interviews and wiretap evidence, Medina-Montes would instruct individuals on transporting methamphetamine to different distributors. Medina-Montes would supply ("front") his distributors with the drugs and payment would occur at a later date once the drugs had been sold on the street. Medina-Montes received the drugs from David Hernandez and Jose Cipriano, who are currently indicted in California. Hernandez has confirmed that he supplied Medina-Montes with large quantities of methamphetamine. Jaime Bailon-Ponce was Medina-Montes "right hand man."

Beatriz Silvestre lived in Salina and received drugs from Medina-Montes. Medina-Montes and defendant traveled to Salina to pick up money for drugs that had been previously "fronted" to Silvestre. On several occasions, Medina-Montes talked to defendant and instructed him to pick up a car, take it to Martin Soto's house, place drugs in the speakers and then transport those drugs to Silvestre.

Araceli Ramirez-Miares, Maria Delsocorro and Jesus Viera were also "front" sellers for Medina-Montes. Medina-Montes instructed Salvador Luna and another individual to go to Jesus Viera's house to deliver drugs to Salina. The police arrested Luna while he was transporting the drugs and Luna stated that he was one of Medina-Montes' drug "mules." Martin Ojeda stated that he sold and transported drugs for Medina-Montes. Roberta Hernandez lived with Ojeda and stated during an interview that she sold drugs for Medina-

-12-

Montes and Ojeda.

Juan Delgadillo was introduced to Medina-Montes by a confidential informant. Delgadillo ordered drugs from Medina-Montes and supplied them to the confidential informant.

Defendant has confessed that he delivered drugs to Christian Weber on April 26, 2005. On that occasion, Weber refused the drugs due to the quality and defendant informed Medina-Montes of his refusal by telephone. Defendant and Ponce returned the drugs to Medina-Montes. On May 23, Medina-Montes spoke to defendant. Defendant wanted drugs for "Sammy" and Medina-Montes told defendant to get the drugs from Ponce to deliver to "Sammy." Defendant got the drugs and was stopped by the police. The methamphetamine in the vehicle was seized by the police.

The court finds that Oldridge's testimony regarding the individuals involved credibly supports the government's allegations that the co-conspirators and defendant were a part of a conspiracy. The remaining consideration is whether the statements proffered by the government will satisfy the third element of Fed. R. Evid. 801(d)(2)(E), whether the out-of-court statements were made in the course of and in furtherance of the conspiracy. The court will determine whether the statements meet the third element during the trial.

**G.  Motion for Identification of Government Informants (Doc. 140)**

Defendant moves for an order of this court to require the government to disclose the identify of government informants.

Due to the strong public interest in furthering

> effective law enforcement, the government enjoys a privilege to withhold from disclosure the identity of persons who furnish law enforcement officers with information on criminal acts. Roviaro v. United States, 353 U.S. 53, 59, 77 S. Ct. 623, 627, 1 L. Ed.2d 639 (1957). While anonymity encourages citizens to communicate their knowledge of unlawful activity, the privilege must give way to fairness when disclosure of the informer's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Id. at 60-61, 77 S. Ct. at 628. The need for disclosure depends on the "particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id. at 62, 77 S. Ct. at 629. In short, the problem "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." Id.
>
> We have applied the legal standard established in Roviaro on numerous occasions. While we agree the district court must disclose the informer's identity if the individual's testimony "might be relevant to the defendant's case and justice would best be served by disclosure," United States v. Reardon, 787 F.2d 512, 517 (10th Cir. 1986), we have consistently ruled that where the information sought "would be merely cumulative," or where the informer did not participate in the illegal transaction, disclosure is not required, United States v. Scafe, 822 F.2d 928, 933 (10th Cir. 1987). See United States v. Freeman, 816 F.2d 558, 562 (10th Cir. 1987); Reardon, 787 F.2d at 517. "[M]ere speculation about the usefulness of an informant's testimony" is not sufficient to warrant disclosure. Scafe, 822 F.2d at 933. Nor must the government supply the defendant with information about an informer when the individual introduces suspected traffickers to narcotics agents. United States v. Ortiz, 804 F.2d 1161, 1166 (10th Cir. 1986).

United States v. Mendoza-Salgado, 964 F.2d 993, 1000-01 (10th Cir. 1992).

Defendant asserts that this information must be disclosed since the informants have transacted with the co-defendants and may have information that is Brady material. The government responds that none of the informants have been involved with defendant. The government has also determined that none of the informants possess Brady information. The government intends to establish defendant's

-14-

involvement in the conspiracy by his statement, wiretap evidence and testimony of co-conspirators.

The court finds that disclosure is unwarranted in this case. The informers did not interact with defendant. Moreover, defendant's assertion that the informants may have information that is Brady material is mere speculation which cannot outweigh the strong public interest in furthering effective law enforcement. Defendant's motion is denied.

### H.   Rule 404(b) Motion in Limine (Doc. 141)

The government intends to offer evidence of defendant's prior possession of methamphetamine on February 24, 2004. On that date, defendant was driving in his brother's vehicle and was stopped by the Wichita Police Department. The officers searched the vehicle and seized two different bags that contained methamphetamine. Defendant possessed approximately 2.15 grams of methamphetamine. Defendant pled guilty to possession of methamphetamine on November 9, 2005.

In United States v. Wilson, 107 F.3d 774 (10th Cir. 1997), the Tenth Circuit held that the district court had abused its discretion by allowing the government to introduce, pursuant to Rule 404(b), evidence of Wilson's previous conviction for cocaine possession to demonstrate knowledge in his subsequent prosecution for possession of cocaine with intent to distribute. Id. at 784-85. The court determined that while the government's use of the evidence to establish knowledge was proper under the first prong of the test set out in Huddleston v. United States, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed.2d 771 (1988), it was not proper under the second prong which required the possession of cocaine to be relevant to demonstrate the

possession with intent to distribute. The court also found that the evidence would be highly prejudicial since it would portray Wilson as a drug user, "who thus is likely to be the individual who sold cocaine." Id. at 785.

In this case, defendant is charged with possession with intent to distribute 467 grams of methamphetamine on April 15, 2005, and 344 grams of methamphetamine on May 23, 2005. His prior conviction was for simple possession of 2.15 grams of methamphetamine. This court is bound to follow the opinion of the Tenth Circuit which stands for the proposition that simple possession is not relevant in establishing that defendant had the intent to distribute large amounts of drugs and the prejudice to defendant would outweigh the little amount of relevance that the prior conviction may have. Accordingly, the government will not be permitted to introduce defendant's prior conviction. Defendant's motion in limine is granted.

**I. Motion to Join in Motions of Co-Defendants (Doc. 142)**

Since all other co-defendants have agreed to plea guilty, defendant's motion is moot.

IT IS SO ORDERED.

Dated this ___11th___ day of May 2006, at Wichita, Kansas.

>                             s/ Monti Belot
>                             Monti L. Belot
>                             UNITED STATES DISTRICT JUDGE